**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ROBERT S. MROZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:05-CV-434-PRC |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice [Act] [DE 30], filed by Plaintiff Robert S. Mroz on June 1, 2007. On June 18, 2007, the Commissioner filed a Defendant's Objection to Plaintiff's Application for EAJA Fees. On June 26, 2007, the Plaintiff filed a Plaintiff's Reply in Support of His Application for Attorneys' Fees Under the Equal Access to Justice Act. For the following reasons, the Court grants the Application.

**PROCEDURAL BACKGROUND**

On April 18, 2003, the Plaintiff applied for DIB, alleging disability since June 24, 2002. On July 7, 2003, the Commissioner initially denied the Plaintiff's claim for benefits, and on September 25, 2003, the Commissioner again denied his claim upon reconsideration. On October 16, 2003, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On October 20, 2004, ALJ William J. Wilkin held the hearing, at which the Plaintiff appeared in person and by counsel, and testified. Vocational expert ("VE") Randall Strohl also testified at the hearing. On October 25, 2004, the ALJ requested that Disability Determination Services schedule a consultative examination for the Plaintiff because the ALJ wanted to learn more about his alleged limitations regarding his

ability to sit.  After the hearing and subsequent consultative exam, the ALJ denied the Plaintiff's

claim for DIB in a February 12, 2005 decision.

On March 3, 2005, the Plaintiff requested that the Social Security Administration Appeals

Council review the ALJ's decision.  On August 26, 2005, the Appeals Council denied his request

for review, making the ALJ's February 12, 2005, decision the final decision of the Commissioner.

On November 29, 2005, the Plaintiff filed a Complaint in this Court, seeking review of the

Commissioner's final decision.  On March 5, 2007, the Court issued an Order remanding the case

for further administrative proceedings.  On March 6, 2007, the Court Clerk entered final judgment

in this matter.

On June 1, 2007, the Plaintiff filed his Application for Attorneys' Fees Under the Equal

Access to Justice Act ("EAJA").  The Application is now fully briefed and before the Court.

## ANALYSIS

In his Application for Attorneys' Fees, the Plaintiff requests an award of fees at an hourly

rate of $156.25 for attorney work performed in 2005, and $160.00 for attorney work performed in

2006 and 2007, under the EAJA, representing the cost of living adjustments allowed by 28 U.S.C.

§ 2412(d)(2)(A)(ii) when employing the "All items" figure provided by the Consumer Price Index.

The Plaintiff also requests an hourly rate of $100.00 for the work performed by law clerks Suzanne

Blaz and Barbara Long.  Finally, the Plaintiff requests compensation for the time spent preparing

the instant Application for Attorneys' Fees.

In his opening Motion, the Plaintiff requests attorneys' fees in the amount of $6,411.56,

which represents 2.25 attorney hours at the rate of $156.25 per hour in 2005 (totaling $351.56); 7.25

attorney hours at the rate of $160.00 per hour in 2006 and 2007 (totaling $1,160.00); and 49.00 law

clerk hours at the rate of $100.00 per hour (totaling $4,900.00).  In his reply brief, the plaintiff requests an adjusted total amount of attorneys' fees of $6,661.56, to include 2.5 law clerk hours at the rate of $100.00 per hour (totaling $250.00) spent preparing the reply brief.[1]

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the [Commissioner] was substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 154 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004).  Pursuant to 42 U.S.C. § 2412(d)(1)(B), a fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the applicant is "eligible to receive an award;" (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed;" and (4) an "alleg[ation] that the position of the [Commissioner] was not substantially justified."  28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this case, it is uncontested that the Plaintiff was the prevailing party and that he filed the fee application in a timely manner.  There are now two issues before this Court: (A) whether the position of the Commissioner was "substantially justified;" and (B) whether the fees requested by the Plaintiff are reasonable.  The Court will address the issues separately.

---

[1]The total attorneys' fees listed in this Order are different from the figures contained in the Plaintiff's briefs as a result of the Court's correction of mathematical errors.

## A.  Substantially justified

Considering whether the Commissioner was substantially justified, the court is to analyze the "position of the [Commissioner]", which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct.  28 U.S.C. § 2412(d)(2)(D); *Golembiewski*, 382 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994).  The trial court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced."  *Golembiewski*, 382 F.3d at 724 (citing *Hallmark Constr.*, 200 F.3d at 1080).  The court should evaluate the factual and legal support for the government's position throughout the entire proceeding.  *See Hallmark Constr.*, 200 F.3d at 1080.  A court need only make one determination regarding the Commissioner's conduct during the entire civil action.  *Jean*, 496 U.S. at 159; *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996).  "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa."  *Marcus*, 17 F.3d at 1036.  The court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue.  *See Hallmark Constr.*, 200 F.3d at 1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Golembiewski*, 382 F.3d at 724.  Expanding on this definition, the United States Court of Appeals for the Seventh Circuit stated, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there

is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 568-69. The Commissioner bears the burden of proof in showing that he had a substantially justified litigation position. *Pierce*, 487 U.S. at 565; *Golembiewski*, 382 F.3d at 724.

For explanatory purposes, the Court summarizes its March 5, 2007, order that remanded this case for further proceedings. The case presented four issues on review: (1) whether the ALJ correctly determined that the Plaintiff suffered from one "severe" impairment; (2) whether the ALJ made an appropriate RFC assessment; (3) whether substantial evidence supported the ALJ's credibility finding in compliance with SSR 96-7p; and (4) whether the ALJ met his burden at Step Five and demonstrated that the Plaintiff could perform a substantial number of jobs that exist in the national economy. Analyzing the first issue, the Court found that the ALJ's determination that certain impairments were not severe could only amount to harmless error because the ALJ concluded that the Plaintiff's post left ankle fracture was severe, and thus had to proceed to Step Three of his analysis. Even if error was possible, the Court found that the ALJ's determination with respect to the severity of the Plaintiff's other alleged impairments was supported by substantial evidence.

With regard to the second issue, the Court found that the ALJ committed two errors in analyzing the Plaintiff's RFC. First, the ALJ erred by failing to recontact the Plaintiff's treating physician, Dr. Hood, for clarification of the doctor's assessment, pursuant to 20 C.F.R. § 404.1512(e). Second, the ALJ failed to incorporate the Plaintiff's anxiety condition, which was not

mentioned as a limitation to the Plaintiff's ability to work, but was referenced on numerous occasions in the record as a condition suffered by the Plaintiff. Therefore, the Court found that the Plaintiff's anxiety should have been incorporated into the ALJ's assessment of the Plaintiff's RFC pursuant to SSR 96-8p.

Discussing the third issue, the Court found that by examining and relying upon the impressions of treating and consulting physicians and objective medical evidence, the ALJ adequately articulated his grounds for finding that the Plaintiff was only partially credible. However, discussing the fourth issue, the Court found that the ALJ committed two additional errors with respect to evaluating the Plaintiff's ability to perform work in the national economy. First, the Court found that the ALJ failed to provide specifics regarding the Plaintiff's ability to sit and stand, which potentially was a crucial factor in determining whether the Plaintiff was able to perform relevant jobs in the national economy. Second, because the ALJ ignored the Plaintiff's anxiety and thereby failed to perform a complete RFC assessment, he also posed a flawed hypothetical to the VE based on the incomplete RFC assessment. The Court ultimately remanded the matter for further proceedings consistent with the March 5, 2007 order.

The Plaintiff argues that the Commissioner's position was not substantially justified based on the flaws in the ALJ's decision that the Court found were appropriate for remand. The Plaintiff contends that the ALJ's actions were unreasonable and that the Commissioner's position defending the ALJ's denial of benefits to the Plaintiff was based on flawed reasoning and misapplication of the law. The Commissioner argues in the ALJ's defense, stating that although the final decision was adverse, the Court found the ALJ's decision to be supported by substantial evidence on the majority of issues presented for review. The Commissioner lists what he counts as seven issues presented

6

for review, and argues that the Court only found three errors.  However, as analyzed *supra*, the Court found four errors on two distinct issues.  The Commissioner contends that the positions he argued on the three (or four) issues that the Court remanded were reasonable and rational.

The Plaintiff repeatedly accuses the Commissioner of "argument counting," whereby the Commissioner allegedly attempts to legitimize its litigation and prelitigation strategy by tallying the number of arguments that the Court affirmed on review.  This strategy of tallying successful arguments as a substantive argument for substantial justification has been disfavored by courts within this circuit.  *See Brown v. Barnhart*, No. 00 C 816, 2002 WL 1377440, at *3 (N.D. Ill. June 24, 2002); *Mallette v. Sullivan*, No. 87 C 4873, 1990 WL 19894, at *3-5 (N.D. Ill. Feb. 15, 1990). The Court disagrees with the Plaintiff's categorization of the Government's brief, and as a result, does not have to address whether argument tallying is a viable strategy.  While the Commissioner does begin his substantial justification argument by tallying the number of issues he prevailed on against the number of issues that the Court remanded for additional review, the Commissioner moved on to substantively address each issue that the Court remanded and attempts to show that his position was substantially justified on all accounts.

Arguing that the substance of the Commissioner's position was not substantially justified, the Plaintiff relies on cases such as *Golembiewski*, 382 F.3d 721, to demonstrate that fees are awarded for cases remanded on as little as a single issue.[2]  In *Golembiewski*, the Seventh Circuit

---

[2]The Plaintiff submits this statement in the section of his brief that argues against "argument counting," in which he asserts that argument counting is not an appropriate theory for the Court to rely on.  Nevertheless, the Plaintiff argues that plaintiffs in cases such as *Golembiewski* can be awarded EAJA fees where their substantive applications for benefits were remanded by district courts for as little as one issue.  The Plaintiff suggests that his case, which was remanded for multiple issues, is an appropriate situation for EAJA fees to be awarded.  The Court finds that this argument amounts to an argument in favor of and relying on argument counting and is incongruous with the Plaintiff's larger argument against the Commissioner's perceived argument counting.  The Court will not conclude that fees are appropriate or inappropriate in this matter based solely on the number of issues in the Court's earlier decision that were found to be correct or incorrect.

evaluated the merits of the plaintiff's application for benefits and remanded the case, reversing the district court, based on the following issues: the ALJ's failure to adequately evaluate the plaintiff's credibility, the ALJ's mischaracterization of the medical evidence, and the ALJ's failure to consider all of the plaintiff's ailments.[3]  *See id*. at 723.  Hearing the case on appeal for the second time, on this occasion to analyze whether EAJA fees should be awarded to the prevailing plaintiff, the Seventh Circuit found in favor of the plaintiff because (1) the commissioner's argument was based on facts not relied on by the ALJ and (2) the ALJ mischaracterized the medical evidence.  *See id*. at 725.  The Court concluded that these two failures, which the Commissioner defended, were such that the Commissioner's defense of the ALJ's decision was not substantially justified.

In this case, the Court found that the ALJ's decision had multiple shortcomings.  Of the bases for remand in this case, perhaps the strongest was the ALJ's failure to address the Plaintiff's anxiety in his mental RFC analysis, as required by SSR 96-8p.[4]  SSR 96-8p defines the RFC assessment as "a function by function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p.  "The RFC assessment must be based on *all* of the relevant evidence in the case record."  *Id*.  "In all cases in which symptoms, such as pain, are alleged, the RFC assessment must: . . . Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate."  SSR 96-8p; *Samuel v. Barnhart*, 316 F. Supp. 2d 768, 772 (E.D. Wis. 2004).  In addition, "The RFC assessment must always consider and

---

[3]Contrary to the Plaintiff's assertion, the Court finds that the *Goliembiewski* court remanded the case on multiple issues.

[4]This failure led to two bases for remand: (1) failing to consider the Plaintiff's anxiety, and (2) failing to pose a complete hypothetical to the VE.

address medical source opinions." SSR 96-8p. With respect to psychiatric conditions, SSR 96-8p "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment" in certain categories identified in the Regulations. *Id*.

Here, the ALJ failed to mention the Plaintiff's anxiety in his RFC analysis. The Plaintiff's anxiety is documented in the medical record as far back as 1999. While this seems to be a glaring error, the Plaintiff's testimony at the hearing before the ALJ mitigates the seriousness of the ALJ's oversight. At the hearing, when the ALJ asked the Plaintiff if he was currently under treatment by a psychiatrist for mental disorders, the Plaintiff answered in the negative. In addition, the Court found that "nowhere in the record has Plaintiff asserted that his anxiety is a limitation on his ability to work." *Mroz v. Barnhart*, 2:05-00434-PRC, at 29 (N.D. Ind. Mar. 5, 2007) (opinion and order remanding case) (hereinafter, "Mar. 5, 2007 Opinion and Order").

While the Plaintiff's testimony that he was not seeing a psychiatrist and did not perceive anxiety as a vocational limitation may lessen the severity of the ALJ's oversight, it is undisputed that the medical record indicates that the Plaintiff underwent treatment for anxiety since at least 1999. Also, the Plaintiff testified at the October 20, 2004, hearing before the ALJ that he was taking Xanax anxiety medication. The medical record indicates that on June 19, 2002, treating physician, Dr. Hood prescribed Xanax for the Plaintiff to treat anxiety. During the later months of 2002, Dr. Hood's records note that the Plaintiff complained of anxiety on a constant basis. Between 2001 and 2003, the Plaintiff's anxiety and/or anxiety medication is noted in medical reports dated January 29, 2001, June 4, 2001, July 5, 2001, July 9, 2001, August 3, 2001, December 3, 2001, August 26, 2002, January 30, 2003, March 30, 2003, July 15, 2003, and October 27, 2003. These records clearly indicate that the Plaintiff had a history of medically recognized anxiety. This documentation of the

Plaintiff's anxiety was more than enough to trigger the ALJ's obligation under SSR 96-8p. Thus, the ALJ's ignorance of the Plaintiff's anxiety was in violation of the legal requirements of SSR 96-8p.

Considering the level of error that must be committed by the Commissioner in pursuing a certain position to trigger an adverse award of attorney's fees, the Seventh Circuit has opined, "Strong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees." *Golembiewski*, 382 F.3d at 724 (citing *Marcus*, 17 F.3d at 1038). The Court finds strong language against the Commissioner's position as to the ALJ's failure to consider the Plaintiff's anxiety in the language of SSR 96-8p quoted above and in *Dixon v. Massanari*, when the Seventh Circuit explained, "In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record." 270 F.3d 1171, 1178 (7th Cir. 2001).

The Court also finds *Samuel* persuasive. *See* 316 F. Supp. 2d at 768. In *Samuel*, the district court awarded EAJA fees to the plaintiff, finding that the Commissioner was not substantially justified in his prelitigation and litigation positions. Of the several bases for finding that the Commissioner's position was not substantially justified, the *Samuel* court relied on the ALJ's ignorance of a treatment report of one of the plaintiff's treating physicians. The ALJ failed to discuss this report in his decision and also failed to incorporate any restrictions noted in the report into his RFC determination. The Commissioner defended this oversight, arguing that not every piece of medical evidence must be considered. The court rejected this argument and held that it lacked merit because the overlooked report contained specific employment restrictions relevant to the plaintiff's ability to work. *See id.* at 774. Similarly, in the instant case, the Plaintiff's anxiety

is potentially relevant to his ability to work.  The ALJ's oversight of this limitation in his RFC analysis was potentially significant upon the ultimate determination that the Plaintiff was able to perform work.

The ALJ in *Samuel* also failed to consider the plaintiff's documented depression in his RFC finding.  The plaintiff's treatment records contained an evaluation of depression severity and suggested work-related limitations.  The court found that the Commissioner was not substantially justified in supporting the ALJ's failure to consider the plaintiff's depression.  *See id*. at 777.  The Court again notes the similarity to the instant case.  Here, the ALJ ignored the Plaintiff's medically documented anxiety and failed to factor anxiety into his RFC analysis.

Analysis of the court in *Conrad v. Barnhart* is also helpful here.  *See* 434 F.3d 987 (7th Cir. 2006).  In *Conrad*, one of the issues on remand, which preceded the plaintiff's request for EAJA fees, was the ALJ's failure to address a treating doctor's vocational assessment that the plaintiff would need part-time employment when returning to work.  The court found that the doctor's mention of part-time work was made in a context of what would benefit the plaintiff, rather than a requirement for the plaintiff's return to work.  *See id*. at 992.  Thus, on review of the plaintiff's EAJA request, the court held that the Commissioner had a reasonable basis, based on the context of the doctor's statement, for not relying on the statement.  *See id*.  Here, unlike *Conrad*, treating physician Dr. Hood diagnosed the Plaintiff as suffering from anxiety and prescribed medication to treat the condition.  Dr. Hood's diagnosis and prescription was not made as a suggestion, it was a course of treatment.

An ALJ's decision is part of the Commissioner's pre-litigation position.  *See Golembiewski*, 382 F.3d at 724 (citing *Sutton v. Chater*, 944 F. Supp. 638, 639 (N.D. Ill. 1996)).  Here, the ALJ

failed to consider the Plaintiff's medical evidence of anxiety in the record in violation of SSR 96-8p.

In addition, the Commissioner defended the ALJ's failure during litigation.  The ALJ's failure to

consider the Plaintiff's documented anxiety condition finds no reasonable basis in the law and led

the Court to find in its March 5, 2007 order that "this Court cannot conclude that the ALJ's

determination is free from legal error."  Mar. 5, 2007 Opinion and Order at 31.  Although the

Plaintiff's request for fees under the EAJA is evaluated under a different standard, the Court arrives

at the same conclusion.  As a result, the Court finds that the Commissioner's position is not

substantially justified.

In addition, the Court finds that another argument submitted by the Commissioner was

decidedly against the law.  The ALJ found that the Plaintiff was unable to perform the full range of

sedentary work; however, he failed to provide any specifics as to the contours of the amount of time

the Plaintiff would be able to sit and/or stand at work.  SSR 96-9 provides that in evaluating the

ability of a plaintiff to do less than a full range of sedentary work, "The RFC assessment must

include a narrative that shows the presence and degree of any specific limitations and restrictions,

as well as an explanation of how the evidence in file was considered in the assessment."  SSR 96-9p.

In its decision remanding this matter, the Court cited *Castrejon v. Apfel*, which relies on SSR 96-9p

and held that the ALJ has a duty to enumerate the specific contours of the claimant's sit/stand option

because duration "is a crucial component in assessing a claimant's ability to work."  *See* 131 F.

Supp. 2d 1053, 1058 (E.D. Wis. 2001).  The ALJ's failure in the instant case to explain the contours

of the Plaintiff's sit/stand option and the Commissioner's defense of this position at litigation

amounts to legal error without substantial justification.  Finding that the Commissioner lacked

12

substantial justification, the Court now turns to the parties' arguments regarding the reasonableness of the fees sought by the Plaintiff.

## B. Fees

As a result of the Court's Order dated March 5, 2007, which reversed and remanded the Commissioner's decision, the Plaintiff is a prevailing party. *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993); *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir. 1995). The Plaintiff has the burden of proving that the EAJA fees he seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); 28 U.S.C. § 2412(d)(1)(B). In *Hensley*, the Supreme Court explained that "'[h]ours that are not properly billed to one's client are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Id*. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). As a result, the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *See id*. The amount of a fee award is left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 437.

Here, the Plaintiff applies for $6,661.56 in fees resulting from 9.5 hours of attorney work and 51.5 hours of law clerk work, which he argues was a reasonable amount of time spent working on this case. The Commissioner disagrees, and argues that the fees are excessive. The Commissioner does not protest the hourly rate sought for attorney work time but does object to the overall fee requested and argues that the $100 hourly rate sought for law clerk work is excessive. The Commissioner further contends that the total fee requested exceeds the average EAJA fee award for

Social Security cases in this jurisdiction and argues that there is no compelling reason justifying the award of higher fees in this case.

In support of his argument that the Plaintiff billed too much for his overall fee, the Commissioner cites *Palmer v. Barnhart*, a case in which the court, analyzing the distribution of work between an attorney and the attorney's law student clerks, stated, "Certainly, it would have been far more efficient for [counsel] to spend a bit more time and simply write the district court brief himself." 227 F. Supp. 2d 975, 979 (N.D. Ill. 2002). Here, the Commissioner argues that the Plaintiff's attorneys' law clerks did too much work on the case, leading to an inefficient distribution of work time.

*Palmer* is distinguishable from the instant case. The *Palmer* opinion cited by the Commissioner, one of several opinions in the case, was before the district court for a second time, having first been reversed on the merits by the Seventh Circuit. The Commissioner objected to 18 hours of law student time spent working on a district court brief when the attorney working on the case spent 6.9 hours reviewing and revising the brief and he had already written a brief to the Appeals Council covering largely the same material and arguments. In the factual setting presented in *Palmer*, the court found that the work of the attorney and law student on the district court brief was excessive, redundant, or otherwise unnecessary, and therefore reduced the law student's fees by half. *See* 227 F. Supp. 2d at 979. Here, the Commissioner does not argue or seemingly have any facts to support a theory that the law clerks' work in this case was redundant or otherwise unnecessary. Instead, the Commissioner submits the general argument that the law clerks' work was excessive because they spent too much time summarizing records and drafting arguments. Thus, the specific holding in *Palmer* is factually unpersuasive but the Court acknowledges the general

14

point of law that fees sought for unnecessary work should be subtracted from any fees ultimately awarded.

Here, the Commissioner contends that it would have been more efficient for Attorney Daley to draft the substance of the Plaintiff's briefs. The Commissioner argues that it was inefficient for one law clerk to draft the argument in the Plaintiff's motion for summary judgment only to have Attorney Daley review that argument and then have the law clerk spend additional time revising the argument. The Commissioner also argues that it was not cost-effective for another law clerk to draft a subsequent reply brief. The Court finds the Commissioner's arguments to be unpersuasive. Examining the time sheets submitted with the Plaintiff's Application for Fees, there are no time entries that indicate wasted time or duplicative work. To the contrary, each time entry indicates that work progressed in a steady manner and that the Plaintiff's attorneys and law clerks were efficiently budgeting time in their advocacy of his case. The total number of work hours devoted to the case by the Plaintiff's attorneys and law clerks also appears to be reasonable. *See Samuel*, 316 F. Supp. 2d at 783 (court awarded 61.05 hours worth of fees); *Porter v. Barnhart*, No. 04 C 6009, 2006 WL 1722377, at *3-4 (N.D. Ill. June 19, 2006) (court awarded 99.4 hours worth of fees); *Wirth v. Barnhart*, 325 F. Supp. 2d 911, 919 (E.D. Wis. 2004) (court awarded 61.1 hours worth of fees). All time entries, as submitted by the Plaintiff, have a legitimate purpose and are grounded in either reviewing the facts of the case or drafting a court filing.

The Court finds that the specific time disputed by the Commissioner represents reasonable use and allocation of attorney and non-attorney time in a Social Security, or other, litigation case. The law clerks billed the majority of hours in this case, 51.5 hours to 9.5 attorney hours. Of those hours, only two hours were spent by an attorney conferring with a law clerk to discuss case strategy.

Only three attorney hours were spent either reviewing a law clerk's work or drafting an outline for a law clerk to follow. Based on these billing statements, the Court finds that the Plaintiff's attorneys and law clerks reasonably allocated their time and efficiently advocated the Plaintiff's case. The billing practices seen in this matter are routine legal practice and not of a sort that can be found to be excessive, redundant, or unnecessary.

Next, the Commissioner argues that the hourly rate billed by the Plaintiff's law clerks should be reduced from $100 to $85. According to the Commissioner, $85 is an appropriate hourly rate because that amount is slightly more than half of Attorney Daley's hourly rate of $160 for 2006. In support of his argument, the Commissioner identifies cases in which courts in this circuit have found that an hourly rate of $100 per hour for law clerk work to be excessive. For example, in *Samuel*, a case involving the same plaintiff's counsel as the instant case, the Commissioner challenged the plaintiff's request that law clerks, including one of the same law clerks involved in this matter, be awarded $100 per hour for time spent working on his case. *See* 316 F. Supp. 2d at 780. The commissioner requested that the fee be reduced to $25 per hour. The court, in its April 29, 2004 decision, ultimately reduced the hourly rate awarded to the plaintiff's law clerks to $85 per hour, not because of their talents, which the court found considerable, but due to their lack of relevant experience. *See id.* at 781.

The Plaintiff responds by citing a number of cases in which courts in this circuit have awarded paralegals or law clerks fees of $100 per hour for work in social security cases. The Commissioner recognizes these cases but argues that the Court should rely on the precedent cited by the Commissioner instead. Militating against the Commissioner's argument are the facts of *Samuel*, the case the Commissioner notably chose to rely on. During *Samuel*, law clerk Suzanne

16

Blaz, who worked on both that case and the instant matter, was a trained paralegal about to begin law school. Approximately three years later, while working on this case, Suzanne Blaz was a law student with additional experience in the law who had worked for Attorney Daley on social security matters for five years according to the Plaintiff's reply brief. Suzanne Blaz's several years of additional experience suggests that this Court, if anything, increase the hourly fee awarded for her work. Barbara Long, the other law clerk who worked on this case, graduated from law school before Suzanne Blaz. Barbara Long graduated from law school in May 2006. Thus, 7.25 of the 11.5 hours she billed in this matter were as a law school graduate. In addition, the Plaintiff states in his reply brief that at the time she worked on this case, Barbara Long had been working on federal court briefs for more than eight months prior.

The Plaintiff also relies on several secondary sources to support his fee request. The Laffey Matrix, a survey of paralegal billing rates, provides that the government's market rate for law clerks in 2005 was $115 per hour, and was $120 per hour in 2006. *See Samuel*, 316 F. Supp. 2d at 780. The Commissioner argues that the Laffey Matrix is a guide for Washington D.C. legal rates and is inapplicable to the Chicago legal market. The Commissioner also argues that the Laffey Matrix does not apply to EAJA cases. The *Samuel* court explained that the Laffey Matrix may be used at least "as a guide to the type of rate the government regularly accepts for paralegal and law clerk work," noting that the Matrix describes rates for the Washington D.C. area. *Id*. at 781.

With regard to the Chicago market specifically, the Plaintiff points to the 2005 Survey of Salaries and Benefits produced by the Illinois Paralegal Association. The Survey provides that paralegals with less than two years of experience have hourly billing rates between $75 and $165 and paralegals with between two and five years of experience have hourly billing rates between $80

17

and $155.  *See* Pl.'s Br. Ex. E at 20.  Despite the questionable statistic that a paralegal with less than two years of experience can bill more than a paralegal with five years of experience, the survey's message is clear, and a billing rate of $100 per hour is well within a Chicago paralegal's billing range.  The Plaintiff also relies on the National Association of Legal Assistants 2004 National Utilization and Compensation Survey Report, which states that in 2004, paralegals in the Great Lakes region, which encompasses Illinois, averaged a $95 billing rate.  *See* Pl.'s Br. Ex. F at 3. Here, the law clerks performed their work in Chicago and the majority of their work occurred in 2006.  Thus, the geographic and temporal setting relating to their work weigh in favor of a relatively high billing rate.

Taking into account the reasonable billing practices and work allocation, the law clerks' experience, and the comparatively expensive market of Chicago, the Court finds that $100 per hour is a reasonable billing rate for both law clerks who worked for the Plaintiff.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the  Plaintiff's Application for Attorneys' Fees Under the Equal Access to Justice [Act] [DE 30] and awards the Plaintiff a total of $6,661.56 in attorneys' fees.  The Court further **ORDERS** that the payment in the amount of $6,661.56 be made directly to Plaintiff's attorney Frederick J. Daley, Jr. in accordance with the Assignment of EAJA Fee agreement signed by the Plaintiff.

SO ORDERED this 23rd day of October, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record